# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MARK RAMEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Civil Action Number |
| **v.** | ) | **2:21-cv-00193-AKK** |
| | ) | |
| **H&E EQUIPMENT SERVICES,** | ) | |
| **INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Mark Ramey alleges that H&E Equipment Services, Inc. discharged him because of his age and retaliated against him in violation of federal and state age-discrimination laws. *See* doc. 1. H&E moves for summary judgment, contending that Ramey fails to offer sufficient evidence to support his claims. Docs. 24; 25. H&E also seeks to strike one of Ramey's exhibits. Doc. 39. H&E's motions are fully briefed and, for the reasons explained below, due to be granted.[1]

## I.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[1] H&E also seeks leave for its reply brief to exceed the court's page limit. Doc. 38. Because Ramey does not oppose the motion, *see id.* at 2, and H&E's reply exceeds the page limit by only one page, *see* doc. 40, the court will grant the motion and consider the reply brief in its entirety.

law." FED. R. CIV. P. 56. "Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment motions, the court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). *See also Anderson*, 477 U.S. at 255. Any factual disputes are resolved in the non-moving party's favor when sufficient competent evidence supports the non-moving party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citation omitted). Moreover, "[a] mere 'scintilla' of evidence

supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II.

H&E sells and rents heavy equipment.  Doc. 26-1 at 6–7.  To this end, H&E utilizes outside sales representatives to generate new revenue, service existing customers, and identify new business within assigned territories.  Doc. 26-6 at 2.  In February 2020, H&E hired Ramey, who was then 51 years old, as one of these outside sales representatives.  Doc. 34-4 at 12.

Ramey earned a $24,000 annual salary, plus commissions, and was to receive a $4,000 rental commission per month during his first six months of employment regardless of how many rentals he made.  Docs. 34-5 at 1; 34-1 at 13.  Relevant here, Ramey signed a non-compete agreement as part of his hiring.  Doc. 34-6.  H&E assigned Ramey the territory west of Interstate 65 in Alabama from Cullman to Demopolis, and his typical workday began at 6:30 a.m. when he visited his territory, made sales calls, coordinated with his manager, tried to rent and sell equipment, and logged information in his computer.  Doc. 34-4 at 15–16.  Sometimes, Ramey would have lunch with his customers outside of his territory.  *Id.* at 20–21.

Ramey reported his sales data and daily activities to H&E through "iConnect."  Doc. 34-1 at 17–18.  According to Ramey, H&E never communicated to him any

3

monthly quotas for sales, rentals, new accounts, or customer contacts.  Doc. 34-4 at 16–17.  But, allegedly unbeknownst to Ramey, H&E expected him to sign at least five new accounts every month.  Doc. 34-1 at 12.  iConnect records show that Ramey generated $6,650 of revenue in February 2020, $9,008 in March 2020, and $28,188 in April 2020.  Doc. 26-7 at 2; *see* doc. 34-4 at 21.  He also opened five new accounts in March and two new accounts in April.  Doc. 26-7 at 2.

Ramey also asserts that he generated other business for H&E for which he did not receive credit.  Doc. 34-4 at 14–15.  For instance, Ramey testified that he did not receive credit for selling or renting equipment to Comfort U.S.A., National Cement, P&M Mechanical, and Keith Electrical Services.  *Id.* at 14–15, 21–22.  Importantly, three of these entities were not located in Ramey's territory, but those customers picked up equipment from the H&E branch in his territory.  *Id.* at 14, 22–23.  Ramey believed that the equipment's presence in his territory entitled him to credit for these rentals.  *Id.* at 22.  But he testified that he did not know whether H&E followed that practice and that his understanding came instead from industry practice.  *Id.*[2]  In addition, Ramey testified that he was not assigned a sales number to keep track of his sales until his last month with H&E.  *Id.* at 15.

---

[2] In part, Ramey testified: ". . . I don't know if [H&E] did it that way or not.  I assume it was that way.  Everybody else was doing it."  *Id.*

4

During the course of his employment, Ramey had biweekly meetings with his manager, 32-year-old Colby Green, and the sales representative who covered the territory east of Interstate 65, 41-year-old Matt Jones, during which they discussed "what jobs [they] had coming up or going on." *Id.* at 22. Ramey testified that neither Green nor any other H&E employee ever criticized his performance or told him to increase his sales numbers. *Id.* at 24. Instead, according to Ramey, Green told him to "keep doing what [he] was doing" and that he was doing a "good job." *Id.* at 25.

In April 2020, H&E's regional vice president, Joe Scherzinger, decided to discharge Ramey because of allegedly unsatisfactory job performance and "KPI's including new accounts, daily call quota, quoting deals, and negative behavior toward role (negative comments about his own inability to perform)." Doc. 26-9 at 2. Green relayed the decision to Ramey on April 24, 2020, doc. 34-1 at 25–26, and a termination notice dated for that day states that Ramey did not meet "[r]ental revenue targets, new account goals, and other [k]ey performance indicators in [iC]onnect including not meeting quotes and daily activities as required," doc. 34-7 at 1.[3] Importantly, Green apparently told Ramey "[he] [would] get [Ramey] out of [his] non-compete" and not to "worry about that." Doc. 34-4 at 26. Thereafter, H&E

---

[3] The termination notice form bears a signature on the "employee signature" line. Doc. 34-7 at 1. While Ramey states in his opposition brief that he "denies ever receiving any such form," doc. 35-1 at 13, Ramey testified, however, that he never received a *copy* of the form, doc. 34-4 at 26–27. He never testified that he did not sign or review the notice at the termination meeting. *See* doc. 34-1 at 16–18.

hired Drew Curry, a 29-year-old, to fill Ramey's position.  Docs. 34-10 at 11; 34-11 at 1.

Ramey filed a charge of age discrimination with the EEOC shortly after his discharge.  Doc. 34-12.  About one week later, the EEOC emailed Ramey's charge to an email address for an H&E legal assistant, Shannon Lanasa.  Doc. 34-13.  H&E claims that Lanasa no longer worked for H&E at that time and that the EEOC notice therefore never came to its attention.   Doc. 26-11 at 3–4.  Two days later, counsel for H&E sent Ramey a letter notifying him that H&E expected him to abide by the terms of his non-compete.  Doc. 34-15 at 1.  Surprised by the letter, Ramey emailed Green about his promise to release Ramey from the non-compete.  Doc. 34-16.  The email mentioned Ramey's EEOC charge, and Green forwarded it to H&E's human resources.  *Id.*

### III.

The court turns to H&E's motion to strike Exhibit 8 in Ramey's evidentiary submission.  Doc. 39.  This exhibit is a screenshot from an iPhone bearing the heading, "What Is My Claim Status?"  Doc. 34-8.  The screenshot provides the following information: filed date, program, WBA, mailed date, benefit period, benefits possible, benefits paid, benefits remaining, and "discharge for misconduct . . . in connection with work that resulted in a disregard for the employer's interest" as the "pending issue(s) on your claim."  *Id.*  Though not explicitly stated in the

screenshot, the information clearly relates to a claim for unemployment benefits. Ramey claims that the exhibit shows that "H&E informed the Alabama Department of Labor that [he] was discharged for misconduct" and illustrates that H&E lied to him about the reason for his termination. Doc. 35-1 at 13, 20. At his deposition, Green testified that he had never seen the exhibit before and knew nothing about it. Doc. 34-1 at 18.

As H&E points out, there is no evidence from the face of the exhibit or elsewhere that the screenshot specifically relates to Ramey or to his employment with H&E. There is also no evidence that the information actually came from the Alabama Department of Labor. And nothing in the record authenticates the exhibit under Federal Rule of Evidence 901 or as an official domestic record under Federal Rule of Civil Procedure 44. For these reasons, Exhibit 8 in its current form is inadmissible at trial. To be sure, a court can consider evidence at summary judgment that the parties can reduce to an admissible form at trial, *see Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005), and Ramey may well be able to do so. But a district court also has broad discretion in determining the admissibility of evidence on summary judgment. *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1243 (11th Cir. 2009). Because of the lack of authentication, context, or information, the court will grant H&E's motion to strike Exhibit 8.

**IV.**

Ramey pleads age discrimination and retaliation claims against H&E under the federal Age Discrimination in Employment Act and the Alabama Age Discrimination in Employment Act. Because the analytical framework for claims under both statutes are the same, *Robinson v. Ala. Cent. Credit Union*, 964 So. 2d 1225, 1228 (Ala. 2007), the ensuing analyses apply to both.

**A.**

The ADEA makes it unlawful to discharge an employee because of her or his age. 29 U.S.C. § 623(a)(1). Where, as here, a plaintiff seeks to prove age discrimination through circumstantial evidence, the plaintiff may utilize the burden-shifting method of proof established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *Sims v. MVM, Inc.*, 704 F.3d 1327, 1333 (11th Cir. 2013).

Under the *McDonnell Douglas* framework, a plaintiff must first establish a *prima facie* case as to four elements: "(1) that she was a member of the protected group of persons between the ages of forty and seventy; (2) that she was subject to adverse employment action; (3) that a substantially younger person filled the position that she sought or from which she was discharged; and (4) that she was qualified to do the job for which she was rejected." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1359 (11th Cir. 1999). If the plaintiff establishes this, the burden shifts to the employer to articulate a legitimate nondiscriminatory reason

for the adverse employment action.  *Id.* at 1361.  Then, the burden shifts to the plaintiff to prove the reason is pretext for age discrimination.  *Id.*  The plaintiff can prove pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).  And a genuine issue of pretext exists if a reasonable jury could find "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's articulated legitimate nondiscriminatory reason.  *Brooks v. Cty. Comm'n of Jefferson Cty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006).

Here, H&E concedes Ramey's *prima facie* case.  Doc. 25 at 17.  But H&E asserts that Ramey has not shown a genuine issue about whether the company's legitimate nondiscriminatory reason for the discharge—Ramey's allegedly unsatisfactory job performance—is pretext for intentional age discrimination.  In response, Ramey does not focus on these job standards but instead argues essentially that he did not receive sufficient time or guidance to thrive in his position.  *See* doc. 35-1 at 5–6.  More specifically, Ramey identifies the following as evidence of pretext: (1) that H&E credited to other salespeople sales or rentals that Ramey made; (2) that he was supposed to receive six months "to establish a book of business before being evaluated"; (3) that he never received written discipline, negative

evaluations, or verbal counseling; (4) that H&E discharged him after only 81 days on the job; and (5) that H&E replaced him with a 29-year-old. *Id.* at 5–6, 19–20.[4] However, while H&E perhaps should have afforded Ramey more time to prove his capacity for the role, none of this evidence, individually or collectively, shows a genuine issue of pretext.

Taking these contentions sequentially, Ramey admitted that he thought he should have received credit for certain sales or rentals outside of his territory based solely on his experience in the industry, rather than H&E's practice. Doc. 34-4 at 22. And, although the six-month rental-commission guarantee was intended to support new salespeople and was not tied to performance, doc. 34-1 at 14, there was no guarantee of employment regardless of job performance. At all times, Ramey remained employed at will. *See* doc. 26-2. In addition, that H&E purportedly never disciplined or counseled Ramey before discharging him does not undermine whether Ramey did what H&E claimed or suggest that age-motivated animus led to the discharge. Further, the length of Ramey's employment is not probative, and because he served as an at-will employee, H&E had the right to decide that 81 days was

---

[4] Ramey also lists that "he was never told the reason for his termination" and that "H&E was contemplating terminating Ramey in favor of Curry as early as April 9, 2020." Doc. 35-1 at 20. However, it is undisputed that Ramey received and reviewed the termination notice bearing the reason for his termination. And April 9, 2020, is the date that Curry applied to a recruiter for an outside sales representative position. Docs. 34-1 at 19; 34-9 at 6. While Ramey may believe the application triggered the decision to discharge him, Ramey's assertion that H&E must have begun to contemplate replacing him with a younger employee is speculative.

enough time to evaluate him. Taken collectively, these contentions at best show that H&E might have been unfair to discharge Ramey while he was still learning his role. But an employer can fire an employee for a good reason or a bad reason, as long as it is not for a discriminatory reason. *Nix v. WLCY Radio/Rahall Comms.*, 738 F.2d 1181, 1187 (11th Cir. 1984) (abrogated on other grounds).

Curry's hire is the closest evidence of pretext that Ramey presents. As a 29-year-old, Curry is substantially younger than Ramey, which could indicate age discrimination. *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996). But H&E's legitimate nondiscriminatory reason rebutted this contention. As stated previously, Ramey failed to present evidence that he met H&E's expectations. And while he believes it was too soon for H&E to discharge him, it is undisputed that he did not meet the company's monthly goals. Moreover, "[t]he question is whether [H&E] [was] dissatisfied with [Ramey] for . . . non-discriminatory reasons, even if mistakenly or unfairly so." *See Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010). That H&E's decision may be unfair is irrelevant. "[I]t is not [the court's] role to second-guess the wisdom of an employer's business decisions—indeed the wisdom of them is irrelevant—as long as those decisions were not made with a discriminatory motive." *Id.* In short, the court is not a super-personnel board tasked with evaluating H&E's business decisions. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000). In

that respect, the fact that H&E hired a younger employee to replace Ramey is not, by itself, evidence that questions the unrebutted, legitimate nondiscriminatory reason or shows that discrimination was the real reason for the discharge.

To close, Ramey has not presented any other evidence that combines with Curry's age to support a reasonable inference that H&E discharged Ramey for age-based reasons, rather than for his job performance.[5]   Accordingly, Ramey fails to provide evidence that would support a reasonable jury finding that H&E's legitimate nondiscriminatory reason for his discharge was pretext or that he suffered age discrimination.   H&E's motion is due to be granted as to the age discrimination claims.

## B.

Ramey next alleges that H&E retaliated against him for filing his EEOC charge by rescinding its promise to release him from his non-compete.   To prove retaliation, a plaintiff must first establish that "(1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the

---

[5] Green also testified that Scherzinger, who made the decision to discharge Ramey, doc. 26-9 at 2, participated in Ramey's hiring, doc. 26-5 at 16.   A reasonable jury could find that this lends credence to H&E's stated reasons for discharging Ramey under the inference that a person who hires an employee of a certain age is unlikely to fire that person within a short period simply because of their age.   *See Williams v. Vitro Servs. Corp.*, 144 F.3d 1438, 1443 (11th Cir. 1998) ("Evidence that the same actor both hired and fired the plaintiff, in some circumstances, may help to convince a jury that the defendant's proffered legitimate reasons for its decision are worthy of belief; it is the province of the jury rather than the court, however, to determine whether the inference generated by 'same actor' evidence is strong enough to outweigh a plaintiff's evidence of pretext.").

adverse action was causally related to the protected expression." *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002). In this case, the latter two elements—the adverse employment action and causation elements—are disputed.

## 1.

In the retaliation context, an "adverse employment action" is an action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Crawford v. Carroll*, 529 F.3d 961, 974 (11th Cir. 2008) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)) (internal quotation marks omitted). Here, a jury could find that a reasonable worker in Ramey's position would be dissuaded from filing a discrimination charge if he reasonably believed H&E would consequentially rescind its promise not to enforce the non-compete agreement. Indeed, the non-compete at issue is substantially restrictive: It precludes Ramey from, among other things, working for any competing business or soliciting any H&E customer in any county in which Ramey worked for one year after his termination date. Doc. 34-6 at 2–3. A release from these restrictions, particularly during the onset of the COVID-19 pandemic, would have been highly valuable to Ramey, such that it may have dissuaded him from filing his charge had he known it would cause H&E to rescind its promise.

For its part, H&E contends that there is no evidence of an adverse employment action. Doc. 25 at 26–27. Green denies promising to release Ramey from the non-

compete, doc. 34-1 at 17, and under this version of events, H&E simply kept in place an agreement to which Ramey voluntarily assented.  Alternatively, assuming that Green made the promise, the non-compete still provides that the parties could only modify or waive the agreement in writing signed by H&E and Ramey.  Doc. 34-6 at 5.  As a result, H&E argues that even if Green promised to release Ramey from the non-compete, he suffered no adverse action because Green's promise did not modify the terms of the agreement.  Doc. 25 at 27.  According to H&E, the letter it sent Ramey merely served to remind him of his non-compete obligations.  *Id.*

But the issue rests on what would have discouraged a reasonable worker from making or supporting a discrimination charge, not on whether Green's promise actually modified the contract.  *See Crawford*, 529 F.3d at 974.  Ramey testified that Green offered to help Ramey out of the non-compete agreement.  Doc. 34-4 at 26. Thus, Ramey could have reasonably expected Green to procure a way to rescind it, and a reasonable jury could find that Ramey suffered an adverse employment action when Green failed to do so.

## 2.

H&E also contends that Ramey cannot prove causation.  H&E notes that the EEOC sent notice of Ramey's charge to an allegedly unmonitored email address for a former H&E employee.  Doc. 25 at 25–26.  H&E thus claims that it had no knowledge of Ramey's charge when it sent the letter at issue, which H&E describes

14

as one of 35 standard letters it sent to former employees between January and May 2020 reminding them of their non-compete agreements.  Doc. 26-11 at 4–5.  The court agrees that Ramey fails to establish a genuine issue as to causation.

Ramey does not dispute that the EEOC sent notice of his charge only to the former employee's email address.  And he has not presented evidence that H&E received notice of his charge from another source.  For example, he offered no evidence that H&E still monitored the former employee's email or that it had the inbox forwarded to other employees.  Instead, Ramey asserts that a genuine issue of causation exists because of the close temporal proximity between the EEOC sending notice of his charge and the letter H&E sent him two days later.  Doc. 35-1 at 6.  And to be sure, close temporal proximity between protected activity and an adverse employment action can raise a genuine dispute of causation.  *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) ("[M]ere temporal proximity, without more, must be 'very close.'").

But a fatal flaw remains.  "A plaintiff [proves causation] if she provides sufficient evidence that *the decisionmaker became aware of the protected conduct* and that there was a close temporal proximity between *this awareness* and the adverse action."  *Matamoros v. Broward Sheriff's Off.*, 2 F.4th 1329, 1336 (11th Cir. 2021) (emphases added).  In other words, "[y]ou can't retaliate against something you don't know exists," and, "[w]ithout some showing of awareness, the causal

15

chain falls apart and the claim fails." *Id.* at 1337.  On this record, because Ramey has not presented evidence that any H&E employee was aware of his EEOC charge before H&E sent the letter at issue, Ramey has failed to establish a causal connection between his protected activity and the adverse employment action.  Therefore, summary judgment is also due on his retaliation claim.

## V.

To close, H&E's motion for summary judgment, doc. 24, and motion to strike, doc. 39, are due to be granted.  The court will issue a separate order granting both.

**DONE** the 14th day of April, 2022.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE